Docket No. 07 CIV. 11102 (NRB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLORIA GEAR,

Plaintiff,

-against-

DEPARTMENT OF EDUCATION; ROSALYN
ALLMAN-MANNING; LAURIE ADRAGNA;
BETTY OXFORD; DORIS MACKEY; MARY
HELFICH; FRANK A. NICHOLAS; CONCETTA
TRICARICO; MS. ROSIE MALDONADO; MS.
CRYSTAL ERRICO; GESI GOODMAN; PATRICIA
ROSMARIN; KATY AMATO; MS. AMY DAVIS;
DEPARTMENT OF EDUCATION OFFICE OF
EQUAL OPPORTUNITY; and JOAN THOMPSON,

Defendants.

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

---

# MICHAEL A. CARDOZO

*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-193
New York, N.Y.  10007-2601

*Of Counsel:*    Danielle J. Barrett

*Telephone:*    (212) 442-3229

*Matter No.* 2008-019330

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ................................................................................... 4

    A.  Background ................................................................................... 4

    B.  Plaintiff Administratively Complains of Discrimination .................... 4

    C.  Plaintiff's Co-worker gets an Order of Protection
        Against Plaintiff ............................................................................ 6

    D.  Plaintiff's Termination and EEOC Charge ........................................ 7

ARGUMENT ................................................................................................... 8

    POINT I ..................................................................................................... 8

    THE COURT LACKS PERSONAL JURISDICTION OVER
    JOAN THOMPSON.

    POINT II .................................................................................................... 8

    PLAINTIFF MAY NOT SUE A NONSUABLE ENTITY,
    THE OEO.

    POINT III ................................................................................................... 9

    PLAINTIFF'S TITLE VII CLAIMS AGAINST
    INDIVIDUALLY-NAMED DEFENDANTS MUST BE
    DISMISSED.

    POINT IV ................................................................................................... 9

    PLAINTIFF'S UNTIMELY TITLE VII CLAIMS MUST BE
    DISMISSED.

    POINT V .................................................................................................. 12

    THE COMPLAINT DOES NOT STATE A *PRIMA FACIE*
    CLAIM.

    A.  Discrimiantion Based on Race/Color ............................................. 12

        1.  Adverse Employment Action ...................................................... 13

        2. Causation ................................................................................ 13

3.  Legitimate Non-discriminatory Reasons for Disciplinine and Termination .............................................. 15

4.  Pretext .................................................................. 17

B.  Retaliation .................................................................. 17

C.  Hostile Work Environment ............................................. 20

POINT VI .......................................................................................... 22

THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER THIS ACTION.

POINT VII ......................................................................................... 22

THE DEFAMATION AND STATE AND CITY HUMAN RIGHTS LAW CLAIMS FAIL TO PLEAD A NOTICE OF CLAIM.

CONCLUSION ................................................................................... 24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

GLORIA GEAR,

                                   Plaintiff,

                                                  07 CIV. 11102 (NRB)

               -against-

DEPARTMENT OF EDUCATION; ROSALYN
ALLMAN-MANNING; LAURIE ADRAGNA; BETTY
OXFORD; DORIS MACKEY; MARY HELFICH;
FRANK A. NICHOLAS; CONCETTA TRICARICO;
MS. ROSIE MALDONADO; MS. CRYSTAL ERRICO;
GESI GOODMAN; PATRICIA ROSMARIN; KATY
AMATO; MS. AMY DAVIS; DEPARTMENT OF
EDUCATION OFFICE OF EQUAL OPPORTUNITY;
and JOAN THOMPSON

                                    Defendants.

------------------------------------------------------------------------ X

## **PRELIMINARY STATEMENT**

        Plaintiff, a former paraprofessional/Educational Assistant in the New York City

Department of Education ("DOE" or "Department"), brings this amended complaint dated

November 19, 2007 ("Complaint") pursuant to 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"),

N.Y. Exec. Law §§ 290-297, and N.Y. City Admin. Code §§ 8-101 to 131, alleging that

defendants discriminated against her based on race and/or color and retaliated against her by

terminating her, repeatedly summoning her to the principal's office, transferring her to a

different classroom and to another school, and falsely accusing her of engaging in unprofessional

conduct towards a co-worker after plaintiff complained that the co-worker was acting

unprofessionally towards her.

Defendants[1] move to dismiss the Complaint on several grounds pursuant to Rule 12(b) of the Federal Rules of Civil Procedure ("FRCP").   First, the Court lacks personal jurisdiction over defendant Joan Thompson ("Thompson").   Thompson was never served with a summons or the Complaint and the 120-days period for service of process has expired.

Second, the Court should dismiss this action as to the Department's Office of Equal Employment Opportunity ("OEO").  By statute, proceedings or actions for the recovery of penalties for violation of any law must be brought in the name of DOE, and not in the name of any of its agencies or subdivisions.  OEO is not a legally distinct entity from DOE and does not have the legal capacity to sue and be sued.

Third, plaintiff's Title VII claims against the individually-named defendants in their personal capacities should be dismissed.  Title VII provides a cause of action against an employer for discrimination in employment, but not against individual employees.

Fourth, plaintiff's Title VII claims insofar as they are based on discrete acts are time-barred and should be dismissed.   A Title VII plaintiff may bring a claim only for acts of discrimination that were timely filed with the Equal Employment Opportunity Commission ("EEOC").  In New York, the charge of discrimination must be filed with the EEOC within 300 days of their alleged occurrence.  Plaintiff filed her EEOC charge on June 11, 2007.  Thus, only acts that occurred on or after August 15, 2006, that is at most 300 days before she filed her EEOC charge, are timely.  Furthermore, discrete discriminatory acts are actionable on the day they occur and must be asserted in an

---

[1] Defendant's  Motion to Dismiss the Complaint is not brought on behalf of Gesi Goodman because she did not consent to the Office of the Corporation Counsel ("Corporation Counsel") representing her.

EEOC complaint within 300 days from their occurrence, in order to be timely.

Fifth, the Complaint fails to state a *prima facie* claim for unlawful discrimination because it fails to allege facts that show that plaintiff suffered an adverse employment action under circumstances permitting an inference of discrimination based on race or color.

Plaintiff's hostile work environment claim must also be dismissed. She claims certain defendants directed stray racial remarks at her in 2005, and attributes a single ambiguous remark to her supervisor. But she fails to allege any facts connecting any of these statements to an adverse employment action. Thus, this claim also fails.

Plaintiff's retaliation claim must be dismissed because she fails to show that she was retaliated against for engaging in a protected activity. She alleges that she was terminated in retaliation for opposing false allegations made against her by her co-worker, but can point to no protected activity concerning this allegation. Even assuming that her retaliation claim concerns employment actions other than her termination, it must still be dismissed because the Complaint does not allege facts sufficient to imply a causal connection between her participation in a protected activity and an adverse employment action.

Sixth, plaintiff's defamation claim, as well as her New York State and City Human Rights Law claims, must be dismissed for failure to plead a notice of claim. No action or special proceeding may be maintained against a school district or its officers unless a written verified claim is presented to that school district within three months from the accrual of the claim. Plaintiff fails to satisfy this requirement.

## STATEMENT OF FACTS[2]

### A.    Background

Plaintiff, worked at the Elizabeth Blackwell Middle School ("School" or "MS210") as a Paraprofessional/Educational Assistant until she was terminated for unprofessional conduct and aggressive behavior towards her co-worker.  See Complaint at "2," and "B25" to "B26."[3]  She claims that her termination was because she is African-American and constitutes retaliation for her opposition to discrimination, and that she was unlawfully discriminated against during the sixteen month period leading up to her termination  Id. at "1."

### B.    Plaintiff Administratively Complains of Discrimination

Plaintiff filed a complaint with OEO in December 2005, alleging that certain DOE employees discriminated against her based on color or race, from January 2005 until December 2005.  See Complaint at "A25" through "A28."  She also alleged "verbal harassment" and "threat[e]ning behavior" by those employees.  Id.  The Complaint is silent as to what happened to her 2005 OEO complaint, but based on documents attached to the Complaint, it would appear that OEO dismissed the complaint.   By letter dated February 3, 2006, OEO informed plaintiff that it contacted the principal of MS210, Rosalyn Allman-Manning ("Principal Manning") about the complaint and learned that Principal Manning had appropriately resolved the allegations.  Id. at "A8."  OEO's investigation revealed that:

---

[2] As a motion to dismiss for failure to state a claim tests only the legal sufficiency of the complaint, the material facts set forth in the Complaint are taken to be true for this motion only.

[3] Plaintiff's Amended Complaint consist of a four-page form complaint, dated March 19, 2007, and a more than 100-page attachment of separate documents which are labeled "A1" through "A35" and "B" through "B80".   In deciding a motion to dismiss, a court may consider "any written instrument attached to the complaint as an exhibit, materials incorporated in it by reference and documents that, although not incorporated by reference, are integral to the complaint."   Hogans v. Dell Magazines/Penny Press, 2008 U.S. Dist. LEXIS 20898, *6 (S.D.N.Y. 2008)(internal quotations and brackets omitted).

      (i) Principal Manning, and the Assistant Principal of MS210, Laurie Adragna ("AP Adragna") met with plaintiff several times to discuss her allegations of discrimination, and plaintiff was transferred to another classroom in January 2006, to minimize her interaction with Mary Helfich ("Mary") and Frank Nicholas ("Nicholas"), and that after the transfer plaintiff indicated to Principal Manning that things were fine; and

      (ii) plaintiff admitted to Principal Manning on one of these occasions that she had an argument with Nicholas in front of students, regarding plaintiff talking while he was conducting class, and that Principal Manning said she would issue both of them disciplinary letters concerning that incident.

Id. Accordingly, OEO concluded that the plaintiff's allegations had been appropriately addressed and closed plaintiff's file. Id.

      Plaintiff filed another OEO claim of discrimination in or about March 2007, apparently complaining about her termination on March 29, 2007; it was also dismissed. See Complaint at "A9" to "A10." By letter dated May 4, 2007, OEO informed plaintiff that the materials she had submitted did not support her allegations of retaliation, Id. at "Á9", and as a result, it found no violation of Chancellor's Regulation A-830 ("A-830"). Id. at "A10." OEO based this finding on its investigation which revealed that in 2006:

- plaintiff was reprimanded for arguing with Nicholas in front of students, and warned that repeated misconduct could lead to further discipline;

- two months after the warning, plaintiff breached DOE rules by not properly reporting her absence and lateness; and

- plaintiff had a disciplinary meeting with her union representative and Principal Manning about her performance.

Id. at "A9." Additionally, OEO found that plaintiff was derelict in February 2007, a few short weeks before her termination, when she:

      (i)    used a cell phone in the classroom, during instructional time, twice; and

> (ii)    left her assigned classroom, while class was
>          in session, without notifying the teacher.

Id.  AP Adragna warned plaintiff that that a repeat of such acts could subject her to disciplinary action.  The very next day, Principal Manning saw her talking on her cell phone in the hallway during class time and suspended her for one week without pay.  Id.

After plaintiff returned from suspension, she allegedly blocked the doorway of the classroom so that her co-worker, Betty Oxford ("Oxford"), could not enter and bumped Oxford. See Complaint at "A9."  Witnesses corroborated these allegations. Id.  In March 2007, she filed a Step I Grievance concerning her suspension; the union chose not to purse it, based on the supporting information plaintiff submitted. Id. at "A24."

**C.    Plaintiff's Co-worker gets an Order of Protection Against Plaintiff**

On March 13, 2007, Oxford commenced a proceeding in state court by order to show cause, seeking an order of protection against plaintiff. See Complaint at "B22," to "B24," and "B57" to "B58."   She stated that she needed the court's immediate assistance because:

> I am in fear for my safety and my life.  Ms. Gloria Gear block [sic] the door so I cannot come in the classroom.  She hit me in the classroom.  She brushed by me in the classroom.  I was blind sided and shoulder check [sic] by Ms. Gear.  Ms. Gear cause me to knock of [sic] balance as well as causing my food and milk to be knock [sic] off the tray.

Id. at "B57" to "B58."  To substantiate her claim, Oxford submitted letters she had written to her superiors concerning plaintiff's harassment and letters from other members of the MS210 staff recounting incidents involving plaintiff, which corroborated her allegations that plaintiff was harassing her. Id. at "B43" to "B46," and "B47" through "B56."  By affidavit dated March 27, 2007, plaintiff opposed Oxford's request for an order of protection and denied that she had harassed her. Id. at "B28" through "B30."  The Supreme Court of the State of New York,

Queens County, granted a temporary restraining order on March 18, 2007 and directed the DOE to "keep Gloria Gear at least 1000 feet from a different building that Betty Oxford." Id. at "B22" through "B24." As a direct result of this Order, on March 21, 2007, the DOE "removed" plaintiff from MS210 and assigned her to another school pending the outcome of a hearing scheduled for April 3, 2007. Id. at "B21."

**D.    Plaintiff's Termination and EEOC Charge**

DOE terminated plaintiff's employment on March 29, 2007, by letter dated the same day, because she had conducted herself

> in an unprofessional manner and were physically aggressive to other members of the staff [which] actions were harassing to your colleague, Ms. Betty Oxford, and are unacceptable and pose a danger to other members of the staff and students.

Complaint at "B25" to "B26." On June 11, 2007, plaintiff filed an EEOC charge, alleging discrimination based on race and/or retaliation, concerning incidents alleged to have occurred between December 9, 2005 to March 29, 2007. Id. at "A4." By notice dated August 4, 2007, the EEOC issued its determination, concluding that it could not find that plaintiff had been unlawfully discriminated against and issued her a Right to Sue Letter. Id. at "A3."

Plaintiff filed her Complaint with the *Pro se* office three days before the ninety day period for filing expired.[4]

---

[4] The complaint of a *pro se* plaintiff proceeding *in forma pauperis* is considered filed as of the date it is received by the *Pro Se* Office. See Toliver v. County of Sullivan, 841 F.2d 41, 42 (2d Cir. 1988).

## ARGUMENT

## POINT I[5]

## THE COURT LACKS PERSONAL JURISDICTION OVER JOAN THOMPSON.

A defendant is not required to respond to the action unless served with a summons and complaint which confers jurisdiction upon the court. See Murphy Bros., Inc. v. Michetti Pipe Stringing, 526 U.S. 344, 347-48 (1999). Plaintiff has the burden of serving a named defendant with a summons and complaint within 120 days of filing the complaint with the court. FRCP Rule 4(c)(1). Plaintiff must prove by a preponderance of the evidence that the Court has jurisdiction over the defendant based on proper service of process. Id. (citing Bankers Trust Co. of California v. Tsoukas, 203 A.D.2d 343, 343 (2d Dept. 2003).

Thompson was never served with a copy of the summons or the Complaint. Plaintiff apparently attempted to serve her by leaving the papers for her at DOE's office. However, service was not effected as Thompson no longer worked for DOE at the time of the attempted service. See the Affidavit of Thomson, dated August 18, 2008 ("Thompson Aff."), which is annexed to Defendants' Notice of Motion to Dismiss the Amended Complaint, dated August 18, 2008 ("NOM"), as Exhibit "B" ¶¶ "3" to "5." Therefore, this action should be dismissed as to Thompson.

## POINT II

## PLAINTIFF MAY NOT SUE A NONSUABLE ENTITY, THE OEO.

This action should be dismissed against OEO because it is not a suable entity. OEO is an internal office of DOE, responsible for handling discrimination claims brought by

---

[5] If the Court denies Thompson's motion to dismiss for lack of proper service of process, it should consider Points III to VII as applicable to her also.

DOE employees against DOE.  See the Affidavit of Mecca E. Santana, dated August 15, 2008, a copy of which is annexed to the NOM, as Exhibit "C" ¶."2."  Plaintiff may sue DOE, but not a DOE office which does not have the capacity to sue or be sued.  See FRCP Rule 17(b);  see, e.g., Gonzalez v. The City of New York, 1999 U.S. Dist. LEXIS 11413, *2 (S.D.N.Y 1999).  New York law provides that an entity that is not legally distinct from the governmental agency of which it is a part, is not a suable entity).

**POINT III**

**PLAINTIFF'S TITLE VII CLAIMS AGAINST INDIVIDUALLY-NAMED DEFENDANTS MUST DE DISMISSED.**

Plaintiff's Title VII claims against the individually-named defendants must be dismissed because she may not sue them in their personal capacities under Title VII.  See, e.g., Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).  While Title VII provides a cause of action against an employer for unlawful employment discrimination, plaintiff may not hold individual employees personally liable under Title VII.  See Tomka, 66 F.3d at 1313.  In Tomka, the Second Circuit dismissed Title VII claims brought against individually-named defendants, supervisors who were sued in their personal capacities, finding that they could not be held personally liable under Title VII for the alleged discriminatory practices of their employer.  Id. Thus, the action should be dismissed as to the defendants that are personally named.

**POINT IV**

**PLAINTIFF'S UNTIMELY TITLE VII CLAIMS MUST BE DISMISSED.**

A Title VII plaintiff must satisfy the jurisdictional prerequisites to a federal action by: (1) timely filing charges with the EEOC; and (2) timely proceeding with the action following

the receipt of a Right to Sue Letter.  See McDonnell Douglass Corp. v. Green, 411 U.S. 792, 798 (1973); see also AMTRAK v. Morgan, 536 U.S. 101, 105 (2002).  A Title VII plaintiff may bring a claim "only for acts of discrimination that occurred within the statutory period," that is within the 300 days immediately prior to filing a charge with EEOC.  Patterson v. County of Oneida, New York, 375 F.3d 206, 220, 225 (2d Cir. 2004); AMTRAK, 536 U.S. at 110.  With regards to discrete acts, the Supreme Court held in AMTRACK, that:

> [they] are not actionable if time barred, **even when they are related to acts alleged in timely filed charges.** Each discrete discriminatory act starts a new clock for filing charges alleging that act.

Id. at 113. (emphasis added).  A discrete act of discrimination or retaliation is actionable on the day it occurs.  Id.  Any act that is "a separate actionable 'unlawful employment practice'" is a discrete act, which must be charged within the statutorily prescribed period. Id. at 114.

Plaintiff's Title VII claims are time-barred in part.  Her timely claims relate to her: (1) termination (March 2007); (2) suspension without pay (March 2007); (3) transfer to a different classroom (September 2006); (4) transfer to another school (March 2007); (5) OEO complaint (March 2007); (6) allegations that defendants falsely accused her of unprofessional behavior in connection with her co-worker's order of protection (March 2007); (7) allegations that defendants falsely accused her of unprofessional behavior and held disciplinary meetings in connection with incidents that happened during the November 2006 through  March 2007 period; and (8) hostile work environment claim.

Since she filed her EEOC charge on June 11, 2007, claims based on discrete acts that occurred before August 15, 2006 are time-barred.   Plaintiff's claims are time-barred insofar as she alleges discrimination and retaliation based on acts that allegedly occurred in February 2005, October 2005, November 2005, December 2005, and January 2006.  See Complaint "A27"

through "A30" and "B" through "B2." The Complaint indicates that plaintiff had either a disciplinary meeting or was issued a disciplinary letter on the following occasions:

> 1.      February 1, 2005 (meeting): concerning an allegation by Betty Oxford ("Oxford") that plaintiff was not listening to the teacher and ripped the teacher's lesson.  Id. at "B."
>
> 2.      October 26, 2005 (letter): concerning plaintiff "telling on" Mary Helfich ("Helfich").  Id. at "B1."
>
> 3.      November 23, 2005 (meeting): concerning plaintiff's allegations that Frank Nicholas ("Nicholas") had set a hot coffee in front of where she was sitting, and Helfich yelling at her in front of students.  Id. at "B."
>
> 4.      November 28, 2005 (meeting): concerning Nicholas's allegation that plaintiff told him "I could not sleep until I get you".  Id. at "B2."
>
> 5.      December 9, 2005 (meeting): concerning Nicholas' allegation against plaintiff.  Id. at "A28."
>
> 6.      January 6, 2006 (letter and meeting): concerning plaintiff's allegation that Nicholas approached her in an unprofessional manner, and his allegation that plaintiff disrupted his lesson.  Id.

Each of these disciplinary actions is separate and unrelated and was triggered by a separate set of circumstances.  Plaintiff may not claim a continuing violation by using her claims that were timely charged to pull in these untimely acts.  The mere fact that her employment continued for the duration of these acts, does not make them related, and will not preserve a cause of action for employment discrimination concerning them.  See, e.g, AMTRACK, 536 U.S. at 112-113 (quoting Delaware State Coll. v. Ricks, 449 U.S. 250, 257 (1980)("Mere continuity of employment, without more is insufficient to prolong the life of a cause of action for employment

discrimination." ).  Since these incidents occurred prior to August 15, 2006, the bar date for the discrete acts, claims relating to them are time-barred.

## POINT V

### THE COMPLAINT DOES NOT STATE A *PRIMA FACIE* CLAIM.

**A.   Discrimination Based on Race and/Color**

To prove a *prima facie* claim of discrimination based on race or color, plaintiff must show that: (1) she is a racial minority; (2) she was qualified to hold the position from which she was discharged; (3) she was discharged or suffered another adverse employment action; and (4) the discharge or other adverse action occurred under circumstances that permit an inference of discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  If plaintiff satisfies this showing, the burden then shifts to the employer to demonstrate that the challenged employment decision was for a legitimate nondiscriminatory reason.  Id.  To defeat the employer's proffered nondiscriminatory reason, plaintiff must prove it was merely a pretext for discrimination, and that the real reason for the employment action was discriminatory.  Id. at 807; see, e.g., St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993)("[A] reason cannot be shown to be a 'pretext' for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason").

For purposes of this motion, defendants do not dispute that plaintiff is a racial minority and was qualified for her job.  Plaintiff must also show that she suffered an adverse employment action that materially affected "the terms and conditions of [her] employment [that] is more disruptive than a mere inconvenience or an alteration of job responsibilities"). Fairbother v. Morrison, 412 F.3d 39, 56 (2d Cir. 2005).

### 1.    Adverse Employment Action

With the exception of her termination and suspension without pay, plaintiff has failed to satisfy this requirement as to any of the other discrete acts she is complaining about. Her claims that she was transferred to a different classroom, and to a different school, without more, do not constitute an adverse employment action. See, e.g., Cobian v. NYC, 2000 U.S. Dist. LEXIS 1749, * 61 (S.D.N.Y. 2000); Morris v. Lindau, 196 F.3d 102, 113 (2d Cir. 1999)("To constitute an adverse employment action, a transfer must be accompanied by a negative change in job description, days and hours, duties and benefits, or opportunity for promotion."); Garber v. NYPD, 1998 U.S. App. LEXIS 20181, * 10 (1998)("a purely lateral transfer, that is a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action."). Nor do the disciplinary warnings, letters, and meetings that plaintiff received constitute a sufficiently adverse employment action . See, e.g., Hill v. The Children's Village, 196 F.Supp. 2d 389, 397 (S.D.N.Y. 2002)(a warning letter standing alone is insufficient to prove a "tangible employment detriment."). The same is true for her allegations that she was falsely accused of unprofessionalism or misconduct. See, e.g., Boyd v. Presbyterian Hosp. in the City of New York, 160 F. Supp. 2d 522, 523-37 (S.D.N.Y. 2001)("gossips, the false accusations, … and the hyperintensified observation" insufficient to constitute adverse employment action).

### 2.  Causation

In any event, nothing in the Complaint suggests  that plaintiff's termination or suspension without pay were based on race or color. See McDonnell Douglas Corp., 411 U.S. at 802 (plaintiff must prove that the challenged adverse employment action occurred under circumstances that imply discrimination).  Plaintiff alleges conclusorily that she would not have

been terminated had she been white and that she is being discriminated against because she is black. See Complaint at "A4" and "A31." She claims that:

> • In September 2005, another paraprofessional, Helfich asked her "why [her] last name doesn't sound slavery, and why her hair is not like you know" and referred to another paraprofessional as plaintiff's "sister" purportedly on the basis that both plaintiff and the other paraprofessional were black. Id. at "A27."

> • On an unspecified date in 2005, students asked her "why Mr. Nicholas and Ms. Mary yell at [her], is it because [she] is black and their [sic] white?" and stated that Mr. Nicholas and Mrs. Mary are racists. Id. at "A27" and "A29."

> • In January 2005, Doris Mackie ("Mackie") and Amy Davis ("Davis"), both teachers, stressed the letter "b" when saying the word "black" instructing the students to use the color black, and that she overheard Mackie tell a class around the same time "you see this colored line that's black and no color when you cross it I'm in control of the classroom". Id. at "A27."

> • On October 21, 2005, Principal Manning supposedly said to her "I do not want to hear black and white issue". Id. at "A22."

Assuming these stray remarks were made, none of them supports an inference that plaintiff was disciplined or terminated because she is black. First, virtually none of them were made by a decision maker, who was responsible for the employment actions that plaintiff is complaining about. See, e.g., McLee v. Chrysler Corp., 109 F.3d 130, 137 (2d Cir. 1997)(defendant's summary judgment motion granted where the supervisor who allegedly directed slurs at plaintiff was not involved in the decision to fire plaintiff). Plaintiff's allegations that teachers and a paraprofessional directed the stray racial statements at her, though, reprehensible, does not, without more, allege circumstances that imply discrimination based on race or color. Plaintiff is challenging employment decisions that were made by Principal Manning, yet she fails to show a connection between those decisions and statements attributed to her co-employees. Id.; see, e.g., Hollander v. American Cyanamid Co., 172 F.3d 192, 201 (2d Cir. 1999)(the court determines the

motive behind the challenged employment action by examining the decision-makers). The only statement plaintiff attributes to Principal Manning is that she stated in 2005 "I do not want to hear black and white issue" purportedly when plaintiff approached her concerning her co-employees' statements. Complaint at "A22." But even this ambiguous stray remark does not demonstrate that Principal Manning was motivated by plaintiff's race or color in disciplining or terminating her. See, e.g., Leeds v. Meltz, 85 F.3d 51, 52 (2d Cir. 1996)(plaintiff must make more than bald allegations that she was discriminated against). Rather, the lapse of almost two years between this statement and plaintiff's termination in March 2007, implies that they are not causally related. See Casale v. Reo, 522 F. Supp. 2d 420, 428 (N.D.N.Y 2007)(no causal nexus where plaintiff's protected activity was separated from the alleged retaliatory acts by at least two years.). Thus, plaintiff's discrimination claim fails.

### 3. Legitimate, Non-discriminatory Reasons for Discipline and Termination

Even assuming that the Complaint liberally and generously read, states a *prima facie* claim of discrimination based on race or color, it also shows that DOE had legitimate nondiscriminatory reasons for suspending and terminating plaintiff. DOE terminated plaintiff because she exhibited unprofessional conduct and was physically aggressive with her co-worker. See Complaint at "B25" to "B26." Althou gh plaintiff denied these allegations, they were corroborated by a teacher. Id. at "B25" to "B26."

Indeed, petitioner's infractions were legion. She was admonished in November 2005 concerning "a situation that occurred in [her] classroom". Complaint at "B9" to "B10." Less than a month later, she was reprimanded for an unspecified reason. Id. at "B11." She was also reprimanded in January 2006 for unprofessional conduct in the classroom, because she, by her own admission, arg ued with the classroom teacher. Id. at "B13." Principal Manning

concluded, therefore, that plaintiff had displayed unprofessional conduct **and warned her that that any future incidents of professional misconduct may lead to further disciplinary action.** Id. (emphasis added). Less than a month later, plaintiff violated DOE regulation by failing to properly notify DOE of an unauthorized absence, and was reprimanded. Id. at "B32." Principal Manning warned her that:

> … continued failure to follow school and citywide procedures could lead to further disciplinary action which may include termination of your employment.

Id. at "B32" to "B33."   Yet, in November 2006, Principal Manning had to have another disciplinary meeting with plaintiff concerning "classroom protocol". Id. at "B14."

In February 2007, about a month before plaintiff was terminated, she had another disciplinary meeting with Principal Manning concerning classroom protocol and was warned that further disciplinary action may be taken against her.   Id. at "B15."   Despite numerous warnings to plaintiff, Principal Manning saw her talking on her cell phone in the hallway outside her classroom, while class was in session on March 1, 2007, and suspended her for a week without pay, as a result. Id. at "B17."   While denying that she had done anything wrong, plaintiff became irate when Principal Manning attempted to speak with her during a meeting held concerning her cell-phone use; she spoke in loud tones and stated that she was "sick as you know what" and "Please leave me alone." Id.   Accordingly, Principal Manning advised her that "[you] must [a] role model for our students and conduct yourself in a respectful and mature manner… [y]ou [must] [sic] adhere to school programs, follow advisory directions and address me in a professional manner." Id.   The history of plaintiff's employment at MS210 as documented by the Complaint, clearly shows that DOE had legitimate nondiscriminatory reasons to discipline and ultimately terminate plaintiff.

### 4. Pretext

Nothing in the Complaint suggests that DOE's reasons for disciplining and terminating plaintiff were pretextual, or suggests that they were in any way owing to discriminatory animus. When a pretext for discrimination is at issue, the court must focus on "what 'motivated the employer,' [not] the factual validity of the underlying imputation against the employee". McPherson v. New York City Dept. of Educ., 457 F.3d 211, 216 (2d Cir. 2006). To support her claim of pretext, plaintiff points to a couple of isolated and remote racial comments directed at her by certain defendants in 2005. Four of these defendants, one paraprofessional and three teachers, did not have the authority to discipline plaintiff. Plaintiff did not allege that AP Adragna made any racial comments. As for Principal Manning, the only alleged comment remotely touching on race was her remark "I do not want to hear black and white issue". Complaint at "A22." But even this does not imply that Principal Manning made employment decisions concerning plaintiff based on the latter's race or color. See St. Mary's Honor Center, 509 U.S. at 515 (to prove pretext, plaintiff must show that defendants' reasons for making the challenged employment decisions are false, and that the real reason was race or color). Even assuming that Principal Manning made the statement in 2005, the Complaint fails to allege facts connecting this single stray remark with an adverse employment action, or even to allege facts from which a nexus between the statement and an employment action could be inferred. Thus, the discrimination fails.

### B.    Retaliation

To establish a retaliation claim, plaintiff must show that she: (1) engaged in protected activity that her employer knew about; (2) that she suffered an adverse employment action; and (3) that there was a direct causal connection between her protected activity and the

adverse employment action.  See Johnson v. Palma, 931 F.2d 203, 207 (2d Cir. 1991).  In a

retaliation claim, plaintiff shows "an adverse employment action" by demonstrating that her

employer's actions were harmful enough to discourage "a reasonable worker from making or

supporting a charge of discrimination."  Burlington Northern v. White, 548 U.S. 53, 57 (2006).

   Plaintiff cannot prove a *prima facie* claim of retaliation.  First, her claim is not

based on a "protected activity," that is, that she opposed or complained about unlawful

discrimination.  See Francis v. Chem. Banking Corp., 213 F.3d 626, * 3 (2d Cir. 2000).  She

claims she was terminated for opposing false allegations her co-worker's made against her,

purportedly by filing an Affidavit in Opposition ("Aff. in Opp.") to Oxford's request for an order

of protection against plaintiff because plaintiff was harassing her.  See Complaint at "3" to "4."

This claim should be rejected because plaintiff only alleges in her Aff. in Opp. that the

allegations against her are false, not that they are discriminatory.  Id. at "3" to "4," and "B28" to

"B30."  She has never alleged that her co-worker made false allegations against her based on her

race or color, or for any other unlawful reason.  Id.  See, e.g., Ruotolo v. City of New York, 514

F.3d 184, 188 (2d Cir. 2008)(the court must dismiss a complaint that fails to plead facts entitling

plaintiff to relief).  Indeed, plaintiff asserts in her Aff. in Opp. that her co-workers falsely

accused her because they resent her, and their allegations have "slander[ed] her name."

Complaint at "B29."  See, e.g, Faragher v. City of Boca Raton, 524 U.S. 775, 787-88

(1998)(mere personality conflicts must not be mistaken for unlawful discrimination, lest the

antidiscrimination laws become a "general civility code.");  Gorley v. Metro-North Commuter

R.R., 2000 U.S. Dist. LEXIS 18427, * 25-26 (S.D.N.Y. 2000)(personal animosity does not

constitute an actionable claim under Title VII).

   Assuming arguendo that the Complaint read liberally and generously is alleging

retaliation other than in connection with plaintiff's Aff. in Opp., it should still be dismissed.   It is axiomatic that plaintiff cannot contend that she was retaliated against  in connection with filing an EEOC charge, where, as here, the employment actions complained of preceded the EEOC charge.  See, e.g., Menes v. Cuny Univ., 92 F. Supp. 2d 294, 309 (S.D.N.Y 2000)(finding that there was no causal nexus between plaintiff's termination and his filing an EEOC charge, where the recommendation to terminate him preceded the filing of the EEOC charge).  Plaintiff cannot allege that she was retaliated against in her employment, which ended in March 2007, for filing an EEOC complaint in June 2007, because there can be no causal nexus between a complaint and employment acts that occurred prior to the complaint.  The same is true with respect to her second OEO complaint which she filed after she had already been terminated.

Even if plaintiff's claim is based on her attempt to file a  Step I Grievance, it should be dismissed.  The Complaint fails to plead that Principal Manning knew that she had filed this grievance.  See, e.g., Johnson, 931 F.2d at 207 (plaintiff must show that her employer knew of her protected activity).  It indicates only that plaintiff filed the grievance, and the union declined to pursue it based upon the information she submitted.  Complaint at "A11."  Consequently, this claim fails to meet the *prima facie* requirements.

Nor may she contend that she was retaliated against based on her December 2005 OEO complaint.  Given the amount of time that elapsed between that charge and the employment actions that she is complaining about, temporal proximity will not support an inference of discrimination.  See, e.g., Valentine v. Standard & Poor's, 50 F. Supp.2d 262, 290 (S.D.N.Y 1999)(emphasis in original)(finding that there was a causal connection between a protected activity and plaintiff's termination in his retaliation claim, where "plaintiff was fired less than two months *after* filing his EEOC charge.").  Plaintiff filed her complaint in December 2005, but

was not suspended, terminated, or removed from MS210 until 2007.  As such, plaintiff's protected activity and the employment acts she alleges are retaliatory, were so far apart that a reasonable person could not deem them related, much less causally connected.  See Manoharan v. Columbia Univ. College of Surgeons, and Physicians, 842 F.2d 590, 593 (1988)("[p]roof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action").  Where, as here, a lapse of almost two years separates the protected activity from the adverse employment actions, there can be no finding that they were causally connected.  Id.; see Casale, 522 F. Supp. 2d at 428.  Thus, plaintiff's retaliation claim must be denied.

**C.      Hostile Work Environment**

To prove a claim for hostile work environment, plaintiff must demonstrate that defendants subjected her to harassment that was either continuous or severe, based on a protected category, here race or color.  See AMTRACK, 536 U.S. at 115.  In order that any of the employment actions that predate August 15, 2006 may be actionable, plaintiff must show that they formed part of a series of acts, at least one of which occurred after August 15, 2006, and was charged in her EEOC complaint.  Id. at 117.

Plaintiff claims that defendants harassed her based on race or color by terminating her, suspending her, and subjecting her to repeated disciplinary actions, which included letters from and meetings with her supervisors.  First, she submits over one hundred pages of documents in support of these claims.  Despite the voluminous documentary evidence attached to the Complaint, it does not support an inference that defendants engaged in an unlawful practice of discrimination against her, whether based on race or color.  The only specific race based factual allegations found in the Complaint refer to a few stray remarks made in 2005.  See

Complaint "A27," and "A29." None of the statements, however, suggest that defendants' actions concerning plaintiff were motivated by race or color. The four defendants who plaintiff alleges made these remarks were either teachers or another paraprofessional and only one is alleged to have had any responsibility for the adverse employment actions she is complaining about. See Wilson v. N.Y. City DOT, 2005 U.S. Dist. LEXIS 21620, * 57 (S.D.N.Y. 2005)(finding that it would be impossible for plaintiff to prove at trial that he was denied a transfer based on race "because there is no conceivable nexus between the alleged discrimination and the decisionmaker.").

Second, plaintiff attributes only a single statement to Principal Manning (and none to AP Adragna), claiming that she told her "I do not want to hear any black white issue". But she fails to allege anything more than that Principal Manning made the remark, which is itself ambiguous. Consequently, plaintiff fails to allege circumstances supporting her claim of employment discrimination based on race or color. Rather, the Complaint demonstrates circumstances that give rise to the inference that none of the employment actions that plaintiff challenges were even remotely linked to the 2005 stray remarks. She was not terminated until March 29, 2007, nearly two years after the purportedly racially offensive statements. The same is true of her suspension, and transfer to another school, which also occurred in March 2007. Plaintiff does not allege that any of the defendants directed any other racially offensive comments at her after December 2005. The allegations, therefore, provide no basis for concluding that plaintiff's termination was related to racial animus.

Third, while plaintiff claims that her supervisors repeatedly disciplined her, nothing in the Complaint suggests that the disciplinary was taken because plaintiff is black. Plaintiff's race and color were obviously not at issue when Principal Manning issued both

plaintiff and Nicholas, a white teacher, a disciplinary letter concerning their verbal altercation in front of students.  See Complaint at "A29" (the Complaint indicates Nicholas is white in that plaintiff alleges that students asked her "why Mr. Nicholas and Ms. Mary yell at [her], is it because [she is] black and their white.").  Nor does plaintiff allege the race of any of the other defendants, except to say that "Ms. Mary is white."  Id.; see, e.g., Ganzy v. Sun Chem. Corp., 2008 U.S. Dist. LEXIS 60149, * 17 (E.D.N.Y. 2008)(Plaintiff may "establish the requisite inference of discrimination by showing 'disparate treatment', that is that [her] employer treated her 'less favorably than similarly situated employees outside [her][racial] group.'")(citing Graham v. L.I.R.R., 230 F.3d 34, 39 (2d Cir. 2000).

## POINT VI

### THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER THIS ACTION

The Court should dismiss this action because it lacks supplemental jurisdiction to hear an action or proceeding absent diversity or federal claims.  See Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001).  "[Absent] any remaining federal claims," a discrimination claim brought pursuant to state law is best decided by the state court.   Id.; see United Mine Workers v. Gibbs, 383 U.S. 715-726-27 (1966).  For the reasons stated in Points I through V above, plaintiff's Title VII claims must be dismissed.  Only pendent State or City law claims remain and these claims should be heard by a New York State court.

## POINT VII

### THE DEFAMATION AND STATE OR CITY HUMAN RIGHTS LAW CLAIMS FAIL TO PLEAD A NOTICE OF CLAIM.

Plaintiff's claims brought pursuant to N.Y. Exec. Law §§ 290-297, and N.Y. City Admin. Code §§ 8-101 to 131, New York State and City Human Rights Laws, respectively, and

her defamation claim, must be dismissed.  According to Education Law § 3813(1), no action or special proceeding may be maintained against a school district or its officers unless a written verified claim is presented to that school district within three months from the accrual of the claim, and the officer or body responsible for adjusting or paying that claim has neglected or refused to do so.  Id.  The notice of claim requirement applies to all actions commenced against a school district, including discrimination actions.  See Amorosi v. S. Colonie Indep. Cent. Sch. Dist., 2007 NY Slip Op 9904, * 5 (2007); see, e.g., Howlett v. Rose, 496 U.S. 356, 377 (1990)(notice of claim requirements prescribed by state law are applicable to state law claims heard in federal court). Plaintiff failed to plead a notice of claim apprising DOE of her claims against it.  While the Court may grant her leave to file a late notice of claim, this may only be done within the statutory period for commencing the underlying claim.  See Amorosi, 2007 NY Slip Op 9904, at * 5.  As discrimination claims against a school district are governed by a one-year limitations period, leave for filing a late notice of claim may only be granted within one year after the occurrence of the alleged discrimination.  Id.; see Education Law § 3813(2)-b.; Promisel v. First American Artificial Flowers, 943 F.2d 251, 257 (2d Cir. 1991), cert. denied, 502 U.S. 1060 (1992)(federal courts must apply substantive state or municipal law to pendent state or municipal claims).  Here, the one year period has expired so these claims fail.

Any defamation claims should be dismissed for the same reason as they are governed by the notice of claim requirement and a one-year limitations period.  See the New York Civil Practice Law and Rules ("CPLR") § 215(3); Education Law § 3813(1)-(2).  Because plaintiff states a tort claim against a school district, she must comply with the notice of claim filing requirements set forth in General Municipal Law § 50(e), which requires that she file a notice of claim upon the school district within ninety days of the claim's accrual.  See Gen. Mun. Law §

50(e)(a).  Failure to comply with this requirement is lethal to the maintenance of this action.  See,

e.g., Gaston v. NYC Dept. of Helath Office of Chief Med. Exam., 432 F.Supp 2d 321, 326-27

(S.D.N.Y. 2006).

## CONCLUSION

For the foregoing reasons, defendants respectfully request that their Motion to

Dismiss be granted, that the Complaint be dismissed in its entirety that the relief requested in the

Complaint be denied in all respects, that judgment be entered for defendants and that defendants

be granted costs, fees, disbursements, together with such other and further relief as the Court

deems just and proper.

Dated:          New York, New York
                August 18, 2008


                              **MICHAEL A. CARDOZO**
                              Corporation Counsel of the
                                 City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-193
                              New York, New York 10007-2601
                              (212) 442-3229
                              dbarrett@law.nyc.gov



By:    _____
                        Danielle J. Barrett
                     Assistant Corporation Counsel

**KATHLEEN M. COMFREY,**
**DANIELLE J. BARRETT**
    (Of Counsel)

Docket No. 07 CIV. 11102 (NRB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLORIA GEAR,

Plaintiff,

-against-

DEPARTMENT OF EDUCATION; ROSALYN
ALLMAN-MANNING; LAURIE ADRAGNA;
BETTY OXFORD; DORIS MACKEY; MARY
HELFICH; FRANK A. NICHOLAS; CONCETTA
TRICARICO; MS. ROSIE MALDONADO; MS.
CRYSTAL ERRICO; GESI GOODMAN; PATRICIA
ROSMARIN; KATY AMATO; MS. AMY DAVIS;
DEPARTMENT OF EDUCATION OFFICE OF
EQUAL OPPORTUNITY; and JOAN THOMPSON

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS
THE AMENDED COMPLAINT**

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-193
New York, N.Y. 10007-2601

*Of Counsel*: Danielle J. Barrett
*Telephone:* (212) 442-3229

Matter No. 2008-019330

*Due and timely service is hereby admitted.*

*Dated:* New York, N.Y.…………………………2008

Signed: ………………………………………………………

Attorney for……………………………………………………